And it's case number four one zero zero two four five for the appellate we have Penelope Smith and for the appellate John T. May proceed. The police support council. My name is Penelope Smith and I am representing the respondent appellant Gary B. In this case. I'm sure that the court's very familiar with the facts. I won't belabor them. And I just like to point out a couple of highlights that Gary B. did in fact appear in court on the day that his petition for involuntary admission was set for a hearing. At the time that he appeared evidently the court had had some conversations with the public defender who had been appointed to represent Mr. B. And the court asked the public defender is there a statement you want to make. And he indicated that Gary B. had given him the names of a number of attorneys. And he was going on to say I guess something else. But it's unfortunate that Mr. B. interrupted that line of answers or explanations by the public defender. And then the public defender indicated that he had gone to see Gary B. the day before the hearing and about the arrangements for his attorney. So I think it's clear from the dialogue that was provided by the public defender that the public defender knew that Gary B. did not want the public defender to represent him in this matter. That he was seeking alternate counsel. He did indicate that he wanted to talk to two different people. Were those people lawyers I was going to ask you? Your Honor, I think that the public defender referred to them as lawyers. But it's not clear from the record that they were. I understand that he was, you know, I'm sorry, the public defender basically represented that Gary B. had told him that Todd Tennant and Mary Pearlstein were attorneys. And he said he had not had an opportunity to call them. So I guess he had not yet had a chance to determine what their role of any was. I think it's important to note that Todd Tennant's name and telephone number was listed on the petition for involuntary admission. And I think at a bare minimum... In what capacity, may I ask you? It wasn't listed, Your Honor. Oh, it was not listed? I thought you said it was listed. It wasn't listed in what capacity. It just said Todd Tennant and it had a 217 telephone number for Todd Tennant. And so we don't know if he, you know, really what role he was. Although what we do know is that Gary B. had represented to the public defender that he was an attorney. That Mr. Tennant was an attorney. Yes. Yes. I think that we could, you know, start off with... I have two basic arguments before this court. One is that Mr. B. was deprived of his right to choice of counsel. And also that he was deprived of his due process right to be present at his hearing. And I think that this court is well aware that not only the Illinois Supreme Court but the United States Supreme Court has found that due process protections do in fact attach when we're talking about involuntary commitment because of the substantial liberty interests that are at stake. So I don't think that there's any issue about that. It's just whether or not the facts of this case give rise to a finding that Gary B. was deprived his right to counsel, which I think it does. There would be... The state seems to indicate in its brief that it's fatal that Gary B. did not inform the court that he wanted a different attorney or that he was represented by alternate counsel. And I don't think that that matters because I think it was very obvious that he didn't want representation by the public defender otherwise the public defender wouldn't make references to arranging for alternate counsel. Also there is no requirement that he indicate that he is represented by alternate counsel, just that he wants alternate counsel. The court at that point should have... Do you identify that he tried to contact these supposed attorneys that your client said he wanted to assist them? Yes, Your Honor. The record does indicate that, I believe it was Mr. Maul, the social worker, indicated that he had tried to contact everyone that Gary B. had represented to him was an attorney or... Well, isn't that thing kind of dispositive because even if your client doesn't want the public defender, if there is no other attorney to appoint, certainly the trial court retains the authority to have the public defender represent the person, though that wasn't their choice. Well, Your Honor, I think that initially if the respondent is found to be indigent and without counsel, the Guardianship and Advocacy Commission, my agency, is supposed to be appointed to represent the respondent in those proceedings. And only if the Guardianship and Advocacy Commission is not available, then does the public defender have any role to play at all. So I don't think that... Also, there is no indication... Mr. Maul did not give the names of anyone that he attempted to contact. So it now had Mr. Maul indicated Gary B gave me the name of Todd Tennant. I contacted Mr. Todd Tennant. Mr. Todd Tennant is a cousin of Gary B's, or Mr. Todd Tennant is an attorney and told me that he does not represent Gary B. I think that would be another matter, but I'm sure that he didn't go into any details about who he had in fact contacted. He did represent, under oath, that he had contacted everyone that Gary B had named as an attorney. So we just don't really know if that included the people that Gary B was talking about on the day that he appeared at his hearing or not. It's not clear to me that Gary B actually named anyone who was an attorney. Is that incorrect? I think that... Or do we not know? I think that if you read between the lines, the public defender was assuming that he had given him the names of several attorneys. And that he wanted to go back and talk with him about his arrangements for counsel for an attorney. So whatever Mr. Tennant told the public defender when they met, which we're not privy to, was enough to give rise to the public defender believing that Gary B did in fact want another attorney and that he had given names of other attorneys. Now there was one particular attorney named Edward Rawls, and the public defender did in fact contact Mr. Rawls and Mr. Rawls indicated that he was not representing Gary B. But still, I mean, even if we... I think the court still had to make an inquiry into Gary B's ability to obtain counsel according to Barbara H. So what precisely then did the court do wrong here? How did the court err? The court erred by not making an inquiry into whether Gary B was capable of obtaining his own counsel. And it could have been that day. There was a case... So the court should have said something along the lines, do you have sufficient funds to hire private counsel? If so, who do you propose to hire? Something like that. Well... How soon did they enter their appearance? That could have been a possible scenario, Your Honor. However, I do believe that his ability to obtain alternate counsel means more his capacity to... Does he have the wherewithal to go out and find an attorney? Even if Todd Tennant wasn't an attorney. Even if Mary Pearl or Pearlton or Pearlstein wasn't an attorney. Even though Mr. Rawls said he didn't represent him. Did he have what it takes to go out and hire an attorney? Now, of course money is going to be part of that. But as we know, there is a great push towards pro bono work. And I don't think that we should hang our hat on the fact that... And say, well, Gary B had no means to hire his own attorney. Therefore, he's stuck with a public defender. Well, do we even know what means he had? No, we don't, because the court did not inquire. In one of the cases that I cited in the brief, and I apologize for not knowing exactly which case that was, there was an evidentiary hearing that was conducted on the day the respondent came to court and said she, I believe it was a female, she wanted her own attorney. And the court inquired. And even in Barbara H., the Illinois Supreme Court indicated that had the court inquired into Barbara H.'s ability to get her own counsel and found that she didn't have that ability, then the court would have been very within its rights to have gone along with the public defender or some other alternate counsel. So it's the court's obligation not to just assume that mentally ill people can't retain counsel and can't get counsel to represent them, don't have the ability to know what to do to get that accomplished. Because everybody's presumed competent to conduct their own legal affairs. And the court just kind of put that notion aside in dealing with Gary B. And I think a lot of it was because of Gary B.'s behavior in court. I mean, I'll be very honest with you, he kept interrupting. He, you know, asked to get these people here so he could talk to them before this man proceeds. He, just, you know, I mean, he was acting up. I'll grant you that. However, I don't think it was to the point. I mean, if the court then tried to make an inquiry of Gary B. and wasn't able to get that done because of Gary B.'s conduct, Gary B. refused to answer the questions, or in any other sense, spoiled any attempt to find out his capability of hiring an attorney, then I think that that would have been sufficient for the court to have done what it was supposed to have done and would not have had any further obligation. But that's not what happened here. I also think that, according to the record, that Gary B. was deprived of his due process right to attend the hearing. He came in, he asked for a number of things, asked to talk to people, then he asked to leave. Or he didn't ask to leave, the court asked him if he wanted to leave. He may have asked, he may have said, I'd like to, can I go, can I go? He didn't. And then the court asked, do you want to leave? And he said yes, and then he left. But I think that he attended the hearing in the first instance. The state cites to Robert R. and indicates that that case supports a finding in this particular case that Gary B. refused to attend his hearing. And I don't think that that's the case. I don't think that the court would have gone on to ask counsel if it was okay to proceed without Gary B. being there if it was taken as a refusal to attend the hearing. Because a refusal to attend the hearing, that's all that it takes to waive a person's, to go proceed without the person being present. That's 3-806B. 3-806A, the attorney waives the presence of the person, and then there has to be a finding, a clear showing, that substantial harm, mental or physical, would come to the person if they remained, or if they actually did have to attend the hearing. So I think that there were two due process errors that were committed in this case, and I don't think that we should be blinded by Gary B.'s behavior in front of the court and make that, prevent that from protecting his due process rights. Thank you. Thank you. Mr. Teefee. May it please the court. Counsel. My name is John Teefee. I'm here on behalf of the state. Respondent raises two arguments on appeal. One, the first argument is that the respondent was not allowed counsel of his choice, and the second argument is that he was denied his right to be present at the hearing. The first argument, whether the respondent was allowed counsel of his choice, I think maybe the better question would be how many opportunities, how many chances does the trial court need to give a respondent who continually asserts new attorney after a new attorney. First, the public defender at the hearing comes into court and says that the respondent had given him several names, had given him a number of different attorneys. A number of different attorney names is exactly the quote. Todd Tennant, as the respondent mentioned, Todd Tennant was listed on the original petition, and his name was just listed under a contact, as a contact the respondent had written down. A phone number was also listed there. So that was on the original petition. Justice Turner mentioned Mould's testimony. Mould testified that he contacted, or attempted to contact, all of the various attorneys or contacts the respondent had given him. And I think it's easy to assume that one of those contacts that he would have contacted was probably Todd Tennant, who was listed on the original petition. Another argument that I have... One problem with that, though, that strikes me, is Mould testified at the hearing. And what Gary B is complaining about is that the trial court made this decision to have the hearing outside of his presence and to continue with representation by the public defender prior to Mould's testimony. So I guess my question is, does Mould's testimony really make any difference inasmuch as it comes in subsequent to the alleged error committed by the trial court? I think on appeal, I understand that the judge didn't actually have Mould's testimony in front of him at the time he made that ruling. But I think what it does is it shows, from the totality of the record, a consistent habit, if you will, that a respondent has of giving forth different names, giving forth different attorneys. So what I think it does is adds credence, even though the actual judge didn't hear, I think it adds credence to the argument that a respondent was given multiple chances, multiple opportunities to inform the court, to inform his public defender that he was represented by someone else. Would you agree your case would be stronger had Mould testified at the stage where the judge was determining whether the public defender should stay in the case and whether Gary B should be allowed to participate in the hearing? I would definitely think that it would be stronger, yes. Another thing I want to point out is that at the time of the hearing, when respondent was informing the court that he wanted to talk to Todd Tennant and this Mary Pearl, he actually referred to Mary Pearl under three different names. There was Mary Pearlton, Mary Pearl, and then finally there was Mary Polstein. And I think that just goes to, you know, none of us are actually sitting in that courtroom, none of us are actually watching how respondent is acting, but I think what that does is it communicates to the trial judge that I'm not sure these are real names, I'm not sure these are attorneys. After respondent was allowed to leave, the comment that his attorney made was that, if I can find it regarding whether these were actually attorneys, and it's in my statement of facts, I apologize. He says that that's all I wanted to bring to the court's attention. Then this morning, respondent gave me apparently Todd Tennant and Pearlstein as attorneys, and I have not had the opportunity to attempt to call them. Of course they are not here. So no one really knew whether these attorneys, or these Mary Pearlston and Todd Tennant were attorneys. The public defender wasn't sure. I think the public defender, it seems to me, the respondent didn't even communicate to the public defender that these are attorneys. The public defender just had to assume, since respondent wanted to talk to these people,  It strikes me, counsel, that both of the issues that are raised by the appellant here concern trial management. And when you have somebody who is obviously mentally unstable, and I don't think the ultimate question of whether or not he should have been committed is really, we don't even reach that based on the issues raised by the brief, but I think we can probably figure out that he's a little wacky. And the issue then is, as a trial judge, do you just say, well, he's nuts and let's just get on with it, or do we say, these are the steps we've got to go through to protect the record to make sure that even though he's crazy, we're giving him all of his due process rights. And I believe that, in my opinion, based on the record, I think the trial judge did that. The public defender came into the hearing and he said that he had inquired with Edward Rawls the day before the hearing. Respondent actually specifically gave the name that he was represented by Edward Rawls. Public defender contacted Edward Rawls. Edward Rawls did not specifically tell the public defender that he did not represent respondent. So I think the question becomes, we need to let the trial judge have the ability to look at the circumstances before him, and at some point he has to make a decision, he or she has to make a decision that, all right, we've all made diligent efforts to seek out an attorney for this respondent, and every time we have a hearing, if respondent throws out another name, then I do not believe that we should require the trial judge to over and over and over inquire into every name that respondent gives. And so I believe the trial judge, in this situation, looked at the circumstances, saw that the public defender had made diligent efforts, recognized that respondent had thrown out a lot of different names, attorneys or not, and based on the situation, based on respondent's actions at the hearing, based on the way that he actually told someone, he said the public defender looked like somebody familiar, police in the past, Mr. Police. Then he told someone to get your hand on my face. Based on all these situations, based on the fact that I think a diligent effort had been made to inquire into respondent's alleged attorneys, the trial judge just made a decision, you know what, we need to do this now. We don't need to continue to look into any further names that respondent may give us. So if there's no further questions about, do your honors have any further questions about that? Okay. The second issue that respondent alleged was that he was denied his right to be present at the hearing. And this is an interesting issue because during respondent's interruptions, he was actually the one that said, can I go? Can I go? And the trial judge asked him, do you want to be here? And he says no. And the trial judge says again, do you want to go? And he says yes. And the trial judge allows him to leave. So my first argument is that under section 3-806, it says that if the recipient's attorney advises the court that the recipient refuses to attend, the hearing may proceed in his or her absence. Respondent counsel was correct that the case that I actually cited on appeal in Ray Robert H., the respondent in that case did not actually show up. Also in Barbara H., the respondent in that case did not actually show up. This case is a little unique because the respondent actually did show up to the hearing, but my argument is that then after being there, he then refused to attend the hearing. And not only was it explicit, he said, can I go? Can I go? But his actions showed that he refused to attend. He continually interrupted the trial judge while he was talking to the public defender. He was throwing out various names that he wanted to talk to. He was talking about police. He called the public defender a police or that he looked somewhere familiar. And so my argument is that the interruptions on top of the explicit statements made by the respondent show the respondent refused to attend the hearing. My argument on the contrary would be that the public defender, as respondent's counsel, properly waived respondent's presence at the hearing and that based on respondent's actions, the court was satisfied by a clear showing that respondent's attendance would subject him to substantial risk of harm. The actions of interrupting, the actions of telling the person to get his hand out of his face, simply the allegations of the petition itself. And then again, the testimony by the psychiatrist, which again happened after the judge made this ruling, showed that the psychiatrist actually testified that respondent, if he didn't get in the trial court at least warned the respondent that, you know, if you don't settle down here, you don't act correctly in court, you're respectful that this hearing can go on even though you aren't present. Again, I think that would have been a better way probably to handle this. But I think the trial court, if you look at the record, did give the respondent that option. He even told the respondent, he said, respondent said, I want to talk to tenant Mary Pearlson. Can I wait until then? And the court said, let me hear from your public defender first, and then I'll hear from you. And then Mr. Finney again starts to talk, and the respondent keeps interrupting. Justice Turner, I agree. I think that that would have been a better way to handle it. He probably should have informed the respondent of that. But he did, you know, he kind of went through these steps. He said, do you want to go? First respondent says, can I go? Can I go? And the respondent says, do you, or I'm sorry, the trial judge says, do you want to stay here? And he says, no. Do you want to leave? Yes. And so I think that under, I guess the way that dialogue took place, and again, I think the trial, it probably would have been better if the trial judge would have said something like, this will continue without you. But I think based on that dialogue, it could have been, it was communicated to respondent that these proceedings will go on even if you want to leave. If you want to leave, I'm going to let you, but this hearing will go on. That concludes my arguments. If your honors, do you not have any other questions? Seeing none, thank you, counsel. Rebuttal, please. I think to address the waiver of the presence argument made by the state, I think that the court could have clearly excluded Gary B. if he was being disruptive, as any court can exclude any participant in a court proceeding. But that's not what happened. In fact, when Gary B. was just indicating that he wanted to talk to some people before this man gets started, meaning before we go forward today, I want to talk to these people. And when he left, there is nothing in the record, as the state claims, that it was communicated to respondent that the hearing would go on without him. I think that he clearly could have thought that given all this information that he had given the court between the public defender and the judge, they would have made some type of an effort to comply with some of his requests to get these people here so he could talk to them before the matter proceeded. I don't see as to the counsel argument, the right to determine counsel. It's not how many chances the defendant or the respondent had to throw out names of various attorneys. The issue is that the court had to determine Gary B.'s ability to decide who would represent him. It's not a situation where we've made a determination that a person can or cannot obtain counsel and then they keep asking for continuances because this attorney is not here and this attorney is not here. That is not what happened. He wasn't given his chance. I think it's also important. Maybe the court made that determination based upon his observations of Gary B. in the courtroom and the representations that had been made to him. Your Honor, I'm sorry. Could you repeat? I said maybe the court made that determination based upon his observations of Gary B. in the courtroom and the representations that were made to the court. I guess that's possible. Yes. Nothing in the record. Well, then how do we substitute our judgment for that in the court? We weren't there to observe Gary B. We didn't hear what was said or the manner in which it was said or how he was behaving. There was no inquiry into his capability to determine who should represent him. I'm just saying maybe the court could tell just from what the court observed that it would have been a waste of the court's time to even get into the question of whether he could afford an attorney, who exactly did he want to represent him and those kinds of questions. Maybe the court decided they aren't even necessary. I can tell based upon my observations. If I could answer your question. Yes. You've got until the red comes on. Okay. I'm sorry. Thank you. I think that ability to hire or to determine who's going to represent you is a very low, requires a very low level of capability. Just like your testamentary capacity, you have to know who the objects of your bounty are, what you have to possibly give. Those are things that we enjoy a presumption that we are competent, according to Phyllis P., to make those determinations, to make legal determinations based upon that. I don't think that anything that happened in the trial court here would ever justify taking that away and saying that the court was justified and, in fact, had enough evidence to find that Gary B. wasn't capable of determining who should represent him in the cause. Thank you. Thank you. The case is submitted. The court stands in recess.